STATE *v.* JOSEPH LAWLER.

October Term, 1931.

Present:   POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed November 4, 1931.

*John J. Finn* for the respondent.

*C. O. Granai* for the State.

SLACK, J. The respondent was convicted in the Barre city court of operating an automobile on a public highway in that city when under the influence of intoxicating liquor, and brings the case here on exceptions.

It appears from the State's evidence that the respondent was arrested between 7.30 and 8.00 o'clock in the evening of July 21, 1930; that he was then sitting in his automobile which had two flat tires and had been driven over the street curb on to an adjacent lawn; that he was in a maudlin condition, rambling, his speech thick and incoherent; that he staggered when he tried to walk, and was assisted from his automobile to that of the officer who arrested him, and that his breath bore the smell of intoxicating liquor.

After the respondent had introduced evidence to show that he had the gasoline tank on his automobile fixed at the shop of one Paquet in Barre the afternoon of the day in question; that he took the tank off the automobile and helped Paquet and one Smith fix it; that they worked on it between three and four hours and during some of the time Paquet and Smith used an acetylene torch about the work; that the respondent wore neither mask nor goggles while assisting them; that he put the tank back on to the automobile; that in doing this he was under the automobile for a time during a part of which the motor was running, and that he left Paquet's shop between 6.30 and 7.00 o'clock, he called as a witness Dr. McFarland, who was asked: "Q. Doctor, assuming that a man about 54, this man over here, had a gasoline tank that was out of repair; that he hustled all day to find a gasoline tank; had called at a repair station and had it welded; had a blacksmith use an acetylene torch for about two hours; had a battery repair man use a torch * * * * and the battery man had used a torch, soldering torch, some half an hour to an hour that this man, had this man take his tank off; had repaired the tank, and had then

started off by seven o'clock in the evening, without any supper, whether or not, in your judgment, doctor, such condition would cause any ill effect on his brain or his sight, or his condition as to steadiness or unsteadiness?'' This question was excluded. In doing so, the court said: ''We rule on the question according to the evidence in the case.'' A careful examination of the record shows that the question assumes facts that had not appeared in evidence and omits a vital fact that had appeared, namely, that from an hour and a half to two hours had intervened between the time the respondent left Paquet's shop and the time he was arrested. What immediate effect the conditions stated in the question, if true, would have had upon the respondent was immaterial and there was no attempt to show what effect, if any, they would have had on him an hour and a half or two hours later. The question, as it stood, was properly excluded.

After the exclusion of the above question and counsel for the respondent had argued at some length his understanding of the evidence and the law relating to expert testimony, he said to the court: ''Q. If I will restrict my question to the evidence as the court understands it, if I will restrict it and put in the evidence as it has been in the case as I understand it, and as' the court understands it, would the court still rule that the question is immaterial?'' The court replied: ''Yes,'' to which the respondent excepted. The exception is without merit. The question of counsel was not tantamount to an offer of what he expected to show, which was necessary to make the exception availing. *Duprat* v. *Chesmore*, 94 Vt. 218, 110 Atl. 305; *Reeves* v. *Redmond*, 95 Vt. 106, 113 Atl. 711. Moreover, neither the question nor the record show what the court understood the evidence to be.

The respondent testified that he lived in the town of Washington and that he was to take his daughter to Barre that night to keep an engagement at 7.15 o'clock. He was then asked: ''Q. Was that why you were hurrying to get to Washington?'' This was excluded and the respondent excepted. Here, again, there was no offer to show what the answer to this question, if allowed, would have been, or its materiality, if in the affirmative. Its only possible relevancy was to account for the respondent's driving his automobile over the curb and on to the

lawn as above stated, and this is not claimed for it. The exception presents nothing for review.

The respondent called Paquet, who repaired his automobile tank, as a witness. After testifying that he had had experience with an acetylene torch, used one daily in his business, and that it was necessary to wear a mask and powerful lens goggles when using it, he was asked: "Q. How long have you been using that torch?" This was excluded as immaterial and the respondent excepted. While this evidence was admissible for the purpose of qualifying the witness to testify to the effect upon one working with the kind of torch that was used, without mask or goggles, and this is all that is claimed for it, it does not follow that its exclusion constituted harmful error. The court might well have considered the witness qualified, as far as experience was concerned, from what had already appeared and, the contrary not appearing, this will be presumed to have been so. Moreover, the respondent was not precluded by the exclusion of this question from showing what knowledge, if any, the witness actually had touching this subject and what such knowledge was. In the circumstances reversible error does not appear.

*Judgment that there is no error in the proceedings below and that the respondent takes nothing by his exceptions. Let execution be done.*